UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

MATTHEW BLANCO,

    Plaintiff,

v.

CENTRAL FLORIDA
TRANSPORT, LLC,
a Florida limited liability company,
PATRICK MCLAUGHLIN, II, and
individual, and PATRICK
MCLAUGHLIN, an individual

    Defendants.
_____/

JURY TRIAL DEMANDED

Case No.

## COMPLAINT

Plaintiff Matthew Blanco, by and through the undersigned attorney files this Complaint against Defendants, Central Florida Transport, LLC, Patrick McLaughlin, II, and Patrick McLaughlin and states as follows:

## PRELIMINARY STATEMENT

1. This is an action against Defendants, Central Florida Transport, LLC, Patrick A. McLaughlin, II, and Patrick A. McLaughlin (collectively, "Defendants") for violation of the federal Fair Labor Standards Act, and the Florida Minimum Wage Act and against Defendant, Central Florida Transport, LLC ("CFT") for violations of the federal Truth in Leasing Act, as well as unjust enrichment and breach of contract.

1

2. Defendants willfully misclassified Plaintiff, Matthew Blanco ("Plaintiff" or "Mr. Blanco") as an independent contractor, when Plaintiff, was, in fact, an employee. As a result, Defendants failed to pay Plaintiff minimum wage under federal and Florida law.

3. CFT also violated the Federal Truth in Leasing Act ("the Act") by requiring Plaintiff to sign a form "Equipment Lease" and making deductions from his pay pursuant to a Payroll Deduction Authorization Form that violate the Act.

4. All conditions precedent to this action have been performed or have occurred.

## JURISDICTION AND VENUE

5. Federal subject matter jurisdiction exists pursuant to 28 U.S.C. § 1331, as the matter in controversy arises under the laws of the United States. Supplemental jurisdiction exists over the state law claims pursuant to 28 U.S.C. § 1367.

6. Federal jurisdiction exists under 28 U.S.C. § 1337 because this action arises under Acts of Congress regulating commerce.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to the claims and injuries occurred in the Middle District of Florida.

## PARTIES

8. Plaintiff is a natural person who resided in Citrus County, Florida throughout his employment with Defendants. Plaintiff currently resides in Dade County, Florida.

9. Defendant CFT is a Florida limited liability company with a principal business address of 511 Mulberry Street, Coleman, FL 33521.

10. Defendant Patrick A. McLaughlin is a natural person who resides in Marion County, Florida. Public filings with the Florida Secretary of State, Division of Corporations list Patrick A. McLaughlin as a manager of CFT.

11. Defendant Patrick A. McLaughlin, II is a natural person who, upon information and belief, resides in Marion County, Florida. Patrick A. McLaughlin, II is also listed as a manager in public filings with the Florida Secretary of State, Division of Corporations

## FACTUAL ALLEGATIONS

### A. Defendants' Business

12. CFT is a motor carrier registered with the U.S. Department of Transportation ("DOT") and the Florida Department of Transportation ("FDOT") that is engaged in the business of transporting road aggregate for its customers.

13. According to CFT's public filings with the DOT, CFT had 175 truck drivers and nearly 1 million miles driven for its commercial vehicles during 2019.

14. To accomplish CFT's business purpose, Defendants rely on hundreds of truck drivers like Plaintiff to pick up and deliver road aggregate throughout Florida.

15. Defendants' truck drivers include "company drivers" who Defendants classify as employees, and "lease-operators," or "owner-operators" who Defendants misclassify as independent contractors. Many, if not most of the "owner operators", own nothing but instead lease their trucks from CFT.

### B. Defendants' Misclassification of Plaintiff as an Independent Contractor

16. Defendants are engaged in interstate commerce for purposes of the FLSA and applicable Florida law because they had employees engaged in commerce or had employees

handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce; and have over $500,000 in gross receipts for each of the last three calendar years.

17. At all times relevant hereto, Defendant Patrick A. McLaughlin was an owner, operator, and/or manager of CFT, controlled CFT's day-to-day operations, and is responsible for the illegal pay practices alleged herein.

18. At all times material hereto, Defendant Patrick A. McLaughlin was an "employer" under the FLSA, FMWA, and applicable Florida law.

19. At all times relevant hereto, Defendant Patrick A. McLaughlin, II was an owner, operator, and/or manager of CFT, controlled CFT's day-to-day operations, and is responsible for the illegal pay practices alleged herein.

20. At all times material hereto, Defendant Patrick A. McLaughlin, II was an "employer" under the FLSA, FMWA, and applicable Florida law.

21. Defendants' misclassification of Plaintiff and other truck drivers as an independent contractors forms a significant part of a labor scheme crafted to pay their employees less than the statutory minimum wage, to shift essentially all related business expenses and risk to its employees, and to eliminate all federal and state legal protections for employees, such as Title VII of the Civil Rights Act of 1964, the Family and Medical Leave Act, the National Labor Relations Act, and wage protection statutes such as the FLSA and similar state statutes.

22. Misclassifying Plaintiff and other truck drivers also allow Defendants to shift their employment tax burden to the truck drivers including the employer's share of Social Security, Medicare taxes, and unemployment taxes.

23. By unlawfully treating Plaintiff and other truck drivers as an independent contractor, Defendants obtain a significant advantage over competitor aggregate trucking

companies that follow federal and state law by classifying their truck drivers as employees and paying wages and employment taxes.

### C. Plaintiff's Employment with Defendants

24. Plaintiff worked for Defendants as a truck driver from approximately November 2019 through January 12, 2021.

25. On or about October 2020, Plaintiff met with CFT's human relations staff about employment opportunities at CFT.

26. During that meeting, CFT's representatives told Mr. Blanco that its lease-operator program offered a more profitable and superior professional opportunity in comparison to working as a company driver for CFT. They also represented to Mr. Blanco that as a lease operator, he would be able to take personal time-off whenever he wanted because he was an "owner" and that CFT would keep him loaded and/or under dispatch.

27. In reliance on those representations, Plaintiff applied for the lease operator program. Upon learning that he had been approved, Plaintiff was provided certain paperwork by CFT as described below.

28. In order to work for Defendants, Mr. Blanco was required to sign an Equipment Lease ("Agreement" or "Lease") by which CFT purportedly leased a commercial truck and driving services from Plaintiff for an unspecified term in exchange for paying Plaintiff compensation based on "88% of gross earned" by Plaintiff's operation of the truck. A copy of the Agreement is attached as **Exhibit "1"**.

29. On October 29, 2019, the Agreement was signed by Plaintiff and an individual in their capacity as a "Company Official" for CFT with the title "HR."

30. The Agreement states that it is to be governed by Florida law.

31. On or about October 30, 2019, Plaintiff was provided with a copy of a Payroll Deduction Authorization Form ("Payroll Form") signed by Tracy Cheatham in her capacity as "Supervisor" for CFT. A copy of the Payroll Form is attached as **Exhibit "2"**.

32. Plaintiff was not given adequate time to review the documents and seek legal advice before signing.

33. The Agreement and Payroll Form are drafted by Defendants and both are presented to Plaintiff on a "take it or leave it" basis.

34. The Payroll Form indicates that beginning on November 15, 2019, CFT would deduct $200 weekly payments from Plaintiff's paycheck for a truck payment totaling $32,266.23. The Payroll Form fails to specify the total number of payments and time period for the deduction.

35. Pursuant to CFT's standard operating procedures, unless he was notified via text, Plaintiff was required to report to CFT's terminal at 3:00 a.m. each morning, Monday through Friday to accept loads that were assigned to him one at a time.

36. Plaintiff had no choice in whether to accept or reject a load, as CFT decided the loads that he would carry.

37. As an employee of Defendants, Plaintiff drove and dropped off aggregate throughout Florida.

38. Contrary to Defendants' representations, Plaintiff and other truck drivers classified as "owner operators" were required to follow Defendants' Time Off Policy and obtain permission before taking any unpaid time off because Defendants did not distinguish between the dispatch for employees and "owner operators." A copy of CFT's Time Off Policy provided to Plaintiff is attached as **Exhibit "3"**.

39. While the Agreement states that Plaintiff is an "independent contractor," the contract allows Defendants to wield extensive control over Plaintiff's work. These controls preclude Plaintiff from operating as independent businesses and guarantee that he remains economically dependent on Defendants.

40. Despite the Defendants' statement in the Agreement that Plaintiff is an "independent contractor," Defendants treats Plaintiff as an employee as a matter of law in that:

   a. CFT retains exclusive control and use of the truck and prohibits Plaintiff from operating the truck for any other company during the term of Agreement;

   b. CFT retains the right to terminate Plaintiff at will;

   c. CFT retains exclusive control over the essential functions necessary for operation of the Plaintiff so-called "independent" operations, including, inter alia, locating customers, purchasing and developing advertising, determining the freight that will be carried by Plaintiff, the terms and conditions under which that freight will be picked up and delivered, the rates that customers will be charged for the deliveries, employing dispatchers, assigning loads to Plaintiff, performing billing and payroll, performing repair and maintenance services, and performing the loading and offloading of freight;

   d. CFT exercises unilateral control over the gross amount earned by the equipment compensation paid to Plaintiff, which may not reflect actual amounts earned by the truck;

   e. CFT controls Plaintiff' opportunity for profit or loss through its setting of the compensation rates;

   f. CFT provides the trailers used by Plaintiff to perform his work;

    g. CFT controls the manner in which Plaintiff perform his work;

    h. CFT monitors and controls the time of Plaintiff's departure and the time of arrival;

    i. CFT requires Plaintiff to follow CFT's policies;

    j. CFT requires Plaintiff to have mobile communication systems that CFT uses to communicate with Plaintiff;

    k. CFT monitors Plaintiff's exact location, speed, location, route, and other aspects of Plaintiff's performance in real time.

    l. CFT gives job instructions which Plaintiff are required to follow;

    m. CFT monitors compliance with instructions, including delivery times, by use of on-board communications and GPS systems, as well as by telephone;

    n. CFT requires the trucks driven by Plaintiff to identify CFT and include CFT's Department of Transportation number;

    o. CFT requires Plaintiff to follow CFT's drug testing program;

    p. CFT controls the payments received by Plaintiff for the work he performs;

    q. CFT controls the Plaintiff's use of his earnings by requiring Plaintiff to fund and maintain a so-called "escrow" accounts that is held by CFT and funded through CFT's deductions from Plaintiff' paychecks, and;

41. In addition to the controls described in the Agreement that make Plaintiff economically reliant on CFT, the Agreement gives Defendants further authority over Plaintiff, including:

    a. CFT retains the right to place Plaintiff in default of the Agreement at will by terminating the Agreement, which CFT may do at any time for any reason;

    b. If Plaintiff fail to ensure CFT receives all of the deductions from Plaintiff's paychecks sufficient to cover the numerous required fees set forth below, Plaintiff would also be in default under the terms of the Agreement;

    c. If a Plaintiff is placed into default under the Agreement, Plaintiff is subject to having to immediately pay the entire amount owed for the entire life of the Lease;

    d. Plaintiff is subject to having the truck repossessed, while not eliminating amounts owed under the Agreement. Simply put, Plaintiff would lose his ability to make any payments under the Agreement through use of the truck, but remain indebted for the entire unpaid balance of "all monies owed to" CFT.

42. All Defendants benefit from their scheme to misclassify the Plaintiff.

43. All actions and omissions described in this complaint were made by Defendants directly or through their supervisory employees and agents.

44. The Lease makes Plaintiff liable for all costs of operating the truck including, inter alia, fuel, insurance, maintenance.

    a. Plaintiff would also be subject to having all amounts earned and owed to Plaintiff subject to "collection," i.e. retained and not paid by CFT and then allocated entirely towards "any monies" CFT determines it is owed by Plaintiff.

    b. Plaintiff would also be subject to having to pay CFT all costs and expenses, including attorneys' fees, the fees of collection agencies, and fees for repossessing the truck.

45. The threat of having the entire amount of the Lease become immediately due and owing, as well as the threat of having the truck repossessed, along with the additional fees and costs, results in CFT exerting complete control Plaintiff, as such Plaintiff had little or no choice but to keep working for CFT or risk losing his truck and being saddled with additional charges even if he was not being paid required wages and the work is unprofitable.

46. Plaintiff is not an independent contractor, but instead an employee of CFT which suffered and permitted Plaintiff to work.

47. The Lease, in combination with the Payroll Form are unlawful and unconscionable and unjustly enrich CFT at the expense of Plaintiff, inter alia insofar as they (a) call for the employment of Plaintiff but claim him to be independent contractors; (b) allow CFT to terminate the Lease at will but nevertheless require Plaintiff to continue to make lease payments; (c) shift Defendants' risk of business downturn to Plaintiff; (d) make Plaintiff responsible for the costs of carrying and maintaining Defendants' fleet; and (e) exact profits and reimbursements from Plaintiff who is, in fact, an employee.

48. CFT fails to pay minimum wages free and clear to Plaintiff.

49. Instead, CFT calculates the pay for Plaintiff by a weekly accounting that makes mandatory automatic deductions from Plaintiff' pay for various expenses that are for CFT's benefit.

50. CFT required Plaintiff to pay, inter alia, for fuel, liability insurance, workers' compensation insurance, tags, taxes, tolls, equipment maintenance and repairs, licensing fees, and truck payments.

51. CFT deducted the truck payments, escrow payments, insurance payments, maintenance and repair costs, fuel costs, taxes and tags, and toll costs directly from Plaintiff's paychecks.

52. To date, CFT has not returned the escrow account to Plaintiff.

53. CFT made weekly deductions from Plaintiff's paycheck for occupational health, as well as bodily injury and property damage insurance furnished by CFT through undisclosed insurers.

54. If the trailers or other equipment provided to Plaintiff by CFT are damaged during the course of Plaintiff' work, CFT also deducts the cost of the repairs directly from Plaintiff' paychecks.

55. The deductions described above are business expenses of Defendants that reduce Plaintiff' wages.

56. While Defendants' business strategy described herein shifts the costs of maintaining Defendants' fleet and general business operations to Plaintiff, Defendants keep all the benefits.

57. This plan also shifts the risk of trucking business downturns from Defendants to Plaintiff as Defendants are not obligated to give Plaintiff any specific amount of work while Plaintiff have continuing obligations to CFT under the Lease.

58. In some weeks, the deductions from Plaintiff's pay yield pay rates below federal and state wage guarantees.

59. Plaintiff also receive no pay for certain compensable hours, including, inter alia, time Plaintiff are engaged to wait during non-driving time, such as pre- and post-inspection time,

waiting time, time filling out paperwork, and other work time for which Plaintiff was entitled to be paid.

60. In some weeks, Defendants failed to pay Plaintiff the minimum wage for each hour worked, including compensable hours for which no compensation was paid.

61. Defendants' treatment of Plaintiff as an independent contractor caused him loss of wages, additional tax burdens, insurance obligations, and a variety of other monetary and non-monetary compensable harm.

62. Defendants' failure to pay Plaintiff the proper wages required by federal law was willful.

63. Defendants' unlawful conduct, as set forth in this Complaint, was intentional, willful, and/or in bad faith, and has caused significant damages to Plaintiff.

64. Defendants were aware or should have been aware that the law required them to pay Plaintiff minimum wages required by law.

65. The Lease failed to set forth the compensation that Plaintiff was to receive for his work by, inter alia, failing to specify the deductions from the Plaintiff's compensation for "mandatory automatic expenses".

66. The Defendants did not provide Plaintiff with copies of the freight bills from which the Plaintiff' compensation was calculated.

67. The Lease, failed to set forth the amount of escrow fund required to be paid by the Plaintiff when seeking to terminate his Lease and use the equipment to work for a different carrier.

**CFT's Violations of the Truth-in-Leasing Act**

69. The Agreement fails to comply with the Act. CFT's violations of the Act injured Plaintiff by contributing to his wages falling below the statutory minimum and inducing him to fall into debt.

70. Upon information and belief, the truck provided by Plaintiff was either leased from Defendant CFT or an affiliate entity.

71. Federal law and regulations prohibit "authorized motor carriers" such as CFT from performing authorized transportation in equipment that they do not own unless the equipment is covered by a written lease meeting the requirements in the Act. *See* 49 C.F.R. 376.12(a).

72. The Agreement fails to conform with the Act's minimum requirements described in 49 C.F.R. 376.12.

73. Upon information and belief, Plaintiff was not an "owner of equipment" at the time the Agreement was signed because Plaintiff did not have title, lawful possession, or the right to exclusively use the truck.

74. The Agreement violates 49 CFR 476.12(i) because it neglects to specify that Plaintiff is not required to rent or purchase any products, equipment or services from CFT as a condition of the Agreement.

75. The Agreement further violates 49 C.F.R. because it does not state the terms of any equipment rental or purchase contract purportedly giving CFT the right to make deductions for purchase or rental payments from Plaintiff's compensation

76. Additionally, by way of example only, the following provisions in the Agreement violate the Act:

a. Paragraphs 1 and 3 violate 49 C.F.R. 376.12(b) because they do not specify the Agreement's duration. Paragraph 1 states that the "Original Rental Term" is from October 28, 2019 to Open, 20___" while Paragraph 3 allows CFT to renew the Agreement "for the same term as the original term of 12 months."

b. Paragraph 4 requires Plaintiff to agree to "mandatory automatic expense deductions" for a non-exhaustive list of expenses. This provision allows CFT to charge back an undefined amount against Plaintiff's compensation in violation of 49 C.F.R. 376.12(h) and fails to clearly specify the compensation that Plaintiff will receive in violation of 49 C.F.R. 376.12(d).

c. Paragraph 7 includes a non-exhaustive list of costs and expenses for which Plaintiff is responsible and fails to specify each party's responsibility for the equipment's operation costs in violation of 49 C.F.R. 376.12(e).

d. Paragraph 7 makes Plaintiff responsible for all costs for damages or loss of cargo but fails to explain the circumstances warranting deduction of these costs from Plaintiff's settlements. Additionally, it neglects to disclose that before making any deduction from Plaintiff's settlements, CFT must provide Plaintiff with a written itemized accounting of any deduction for cargo or property damage.

e. Paragraphs 8, 9, 19, and 20 are contrary to 49 C.F.R 376.12(c)'s requirement that CFT assume complete responsibility for the operation of the equipment during the lease term, more specifically:

   (i) Paragraph 8 attempts to limit incidents covered by insurance furnished by CFT;

   (ii) Paragraph 9 purports to make Plaintiff the guarantor of the equipment's condition, by stating that Plaintiff "warrants that equipment is…in good, safe and efficient operational condition."

   (iii) Paragraph 19 shifts the costs of any insurance deductible payments to Plaintiff and specifies that such payments may be deducted from Plaintiff's pay.

   (iv) Paragraph 20, titled "Indemnity" requires Plaintiff to "defend, indemnify and hold harmless" CFT.

f. Paragraph 19 violates 49 C.F.R. 376.12(c)(1) because it requires Plaintiff to indemnify CFT, as well as its "consultants, agents and employees" and holds Plaintiff responsible for "any an [sic] all claims, damages, losses and expenses" incurred or arising out the operation of the truck described in the Agreement.

g. Paragraph 7 also violates 49 C.F.R. 376.129(c)(1) because it states that CFT is not responsible for any injuries or damages to a driver or a driver's assistant and illegally limits CFT's "complete responsibility" for the operation of truck.

h. Further, the Agreement fails to comply with 48 C.F.R. 376.12(e) because fails to specify which party is responsible for specific items including but not limited to removing identification devices from the equipment at the lease end, the cost of fuel and fuel taxes, empty mileage, permits including base plates and licenses and any unused portions of these items, as well as loading and unloading property onto and from the motor vehicle.

i. Paragraph 7 requires Plaintiff pay "all fines and penalties arising out of the use of (sic) operation of said equipment" contrary to 49 C.F.R. 376.12(5) which mandates that CFT

is to assume the risk and costs of fines for overweight and oversize trailers when these items are outside of Plaintiff's control.

77. As a result of the actions specified in paragraphs 1 through 76 above, Defendants caused Plaintiff financial injury and lost compensation.

## COUNT I
### (Violations of the FLSA as to Defendants)

78. Plaintiff realleges and incorporates paragraphs 1 through 77.

79. At all relevant times, Plaintiff was an employee of Defendants within the meaning of 29 U.S.C. § 203(e).

80. Within the applicable statute of limitations, Defendants failed to pay minimum wages to Plaintiff in violation of the Fair Labor Standards Act, 29 U. S. C. § 206 et seq. and its implementing regulations by misclassifying Plaintiff as an independent contractor, failing to pay anything for certain hours worked and/or by failing to pay at least the minimum wage for each hour worked per workweek.

81. As a direct and proximate result of Defendant's failure to pay Plaintiff minimum wages, Plaintiff has suffered damages.

82. Defendants' violations of the FLSA were willful.

83. Plaintiff is entitled to relief for Defendants' violations of the FL SA under 29 U.S.C. § 216(b) including unpaid minimum wages, liquidated damages, prejudgment interest, reasonable attorney's fees and costs, and all other relief as this Court deems just and proper.

## COUNT II
### (Violations of the FMWA as to Defendants)

84. Plaintiff realleges and incorporates paragraphs 1 through 77.

85. During the 3 years prior to the filing of this action, Defendants had a policy and practice of compensating Plaintiff at a rate less than the applicable minimum wage as required by the FLSA, FMWA, and other applicable Florida law.

86. At all relevant times, Plaintiff was an "employee" within the meaning of Florida law.

87. Florida law requires employers to pay all employees at least the minimum wage for all hours worked.

88. Plaintiff is not exempt from the minimum wage requirements of Florida law.

89. During the applicable limitations period, Defendants had a policy and practice of failing to pay minimum wages to Plaintiff for certain hours worked and/or by failing to pay at least the minimum wage for each hour worked per work week.

90. As a result of Defendants' failure to pay minimum wages earned and due to Plaintiff, Defendants have violated, and continue to violate Florida law.

91. As a result of these violations, Plaintiff is entitled to relief, including his unpaid wages earned and due as provided by Florida Statutes section, and recovery of attorneys' fees, costs, and expenses of this action, as well as such other legal and equitable relief from Defendants' unlawful and willful conduct as the Court deems just and proper.

## COUNT III
### (UNJUST ENRICHMENT)

92. Plaintiff realleges and incorporates paragraphs 1 through 77.

93. The Agreement that Defendants required Plaintiff to sign and the Payroll Form are unconscionable.

94. Defendants' unconscionable agreements are void, or alternatively, voidable by under common law.

95. Defendants have been unjustly enriched by their deductions from the wages of Plaintiff and by the unconscionable fees extracted by Defendants that shift virtually all costs of maintaining Defendants' fleet and general business operations to Plaintiff.

96. Under the circumstances, it would be inequitable for Defendants to retain the amounts deducted from Plaintiff' wages and the fees paid by Plaintiff, who was in fact Defendants' employee.

## COUNT IV
### (Violations of the Truth in Leasing Act as to CFT)

97. Plaintiff realleges and incorporates paragraphs 1 through77.

98. During the applicable limitations period, Defendants violated the numerous provisions of the Truth in Leasing Act as described above.

99. As a result of Defendants' conduct, Plaintiff has suffered damages, including the retention of unlawfully held escrow monies, charges made for unlawful chargebacks, and failure to provide compensation due under the Agreement

100. Reasonable attorneys' fees, costs, and expenses of this action, as provided by 49 U.S.C. § 14704.

## COUNT V
### (Breach of Contract as to CFT)

101. Plaintiff realleges and incorporates paragraphs 1 through 77.

102. CFT failed to pay Plaintiff 88% of the "gross earned" by Plaintiff's operation of the Truck as specified in paragraph 4 of the Agreement.

103. CFT's failure to Plaintiff 88% of the gross revenue constitutes a breach of a material term of the Agreement.

104. As a direct and proximate result of CFT's breach, Plaintiff has suffered damages.

WHEREFORE, Plaintiff respectfully requests that this Court enter the following relief:

With respect to FLSA and FMWA violations:

    a. Damages for all minimum wages, wrongfully withheld deductions, and other unpaid wages that are due to the named Plaintiff under the FLSA;

    b. Liquidated damages under the FLSA, FMWA and applicable Florida law;

    c. Reasonable attorneys' fees and costs pursuant to the FLSA, FMWA and applicable Florida law;

    d. Pre- and post-judgment interest; and

    e. All other such relief that this Court deems just and proper.

With respect to the unjust enrichment claim:

    a. Damages and restitution, including disgorgement of Defendants' profits;

    b. Pre-judgment and post-judgment interest;

    c. Reasonable attorney's fees and costs; and

    d. All other such relief this Court deems just and proper.

With respect to the breach of contract claim:

    a. Compensatory damages;

  b. Reasonable attorney's fees and costs pursuant to paragraph 16 of the Agreement;

  c. Pre- and post-judgment interest; and

  d. All other such relief this Court deems just and proper.

With respect to the TILA claims:

  a. Statutory, compensatory, liquidated damages, appropriate statutory penalties, restitution, and other make whole relief to be paid by Defendants according to proof;

  b. Pre-judgment and Post-judgment interest;

  c. Reasonable attorneys' fees and costs as provided by 49 U.S.C. 14704(e)

  d. Awarding Plaintiff such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a trial by jury pursuant to Fed. R. Civ. P. 38(b)

Respectfully submitted this 4th day of October, 2021.

**DEUTSCHMAN & ZAKARIA**

/s/Deirdre Aretini
305 N. Apopka Avenue
Inverness, FL 34450
Ph: 352-444-3463
Fax: 352-559-0443
Florida Bar N. 039607
daretini@dnzlaw.com
workcomp2@dnzlaw.com